**SECURITIES AND EXCHANGE COM-
MISSION, Appellant,**

v.

**Lyndon L. PEARSON, Appellee.**

**No. 9975.**

United States Court of Appeals,
Tenth Circuit.

May 22, 1970.

David Ferber, Solicitor (Philip A. Loomis, Jr., Gen. Counsel, Edward B. Wagner, Asst. Gen. Counsel, Warren G. Stolusky, Atty., S. E. C., Washington, D. C., were on the brief) for appellant.

Cleeta John Rogers, Oklahoma City, Okl. (B. Cyril Rogers and A. Bob Jordan, Oklahoma City, Okl., were on the brief) for appellee.

Before MURRAH and PICKETT, Senior Circuit Judges, and HOLLOWAY, Circuit Judge.

HOLLOWAY, Circuit Judge.

The Securities and Exchange Commission (the Commission) brought suit in the District Court for preliminary and permanent injunctions against eight defendants, including appellee Pearson, to restrain violations of the registration and antifraud provisions of the federal securities laws.[1] Specifically the Commission charged that violations occurred by trading in unregistered stock; unlawful manipulations of the price of the stock; and fraudulent conduct by failure to reveal nonregistration and restrictions on transfer of the stock, among other things.

Other defendants consented to injunctions and only appellee Pearson is now involved. After a hearing on the application for the preliminary injunction and a motion to dismiss by appellee, the trial court made findings and conclusions favorable to appellee, denied the preliminary injunction and dismissed the complaint. A motion to amend the findings, to vacate the order and for other relief was denied, except for the making of one additional finding that appellee was specifically not guilty of any of the alleged violations. The Court entered judgment subsequently, stating that the Commission elected to stand on its complaint, and that the action was dismissed. This appeal is taken from the denial of the preliminary injunction and the dismissal of the action.

The findings and conclusions premising these rulings were as follows. The Court stated that appellee defended on the basis that he was innocent of the allegations and acted only in a manner approved and condoned by his associates in Andresen & Company (Andresen) of which appellee was an officer and partner until August, 1966. From the Commission affidavit, a stipulation admitting the essential facts in the affidavit, and testimony by appellee and his wife, the Court found that while conducting business for Andresen appellee became involved in transactions with officers of Community National Life Insurance Company (Community), some of which included trading in unregistered shares of Community; that in all such transactions appellee acted on behalf of Andresen as a partner, officer and associate of the firm; that the firm had knowledge of his activities, to which it had given its approval, so that his actions were those of the firm; and that appellee did not intentionally or knowingly act in any fraudulent manner, but at most made unbusinesslike decisions, which were admitted. It was further found that appellee was employed as a sales manager for a plastics company since September, 1966, and that he had no intention of returning to the stock brokerage business in the foreseeable future. A favorable finding was made concerning appellee's forthrightness, candor, demeanor and good reputation. The Court concluded that appellee was in no position and had no intention to commit any violation

1. Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, as amended (15 U.S.C.A. 77e(a) and (c) and 77q(a)), and Section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S. C.A. Section 78j(b), and Rules 10b–5 and 10b–6 thereunder (17 C.F.R. 240.10b– 5 and 240.10b–6). The action was brought pursuant to Section 20(b) of the Securities Act of 1933, as amended (15 U.S.C.A. 77t(b)), and Section 21(e) of the Securities Exchange Act of 1934, as amended (15 U.S.C.A. Section 78u (e)).

complained of, and that to enjoin him was unwarranted and unnecessary and would only place a stigma on him.

■ First we turn to the question whether the trial court properly denied the preliminary injunction. The Commission argues that the finding that appellee was not guilty of violations of the securities laws was clearly erroneous; that the Court applied incorrect legal principles in connection with other findings made; and that the trial court abused its discretion in denying the preliminary injunction.

We conclude that the evidence concerning the violations involved no material conflict. At the outset we must resolve the question whether appellee admitted the subsidiary facts stated in the Commission affidavit as to his actions. On review of the record we are convinced that by statements of counsel to the Court those basic facts were admitted and that the trial court so understood. The only reservations made in the record concerning the detailed Commission affidavit were that appellee did not concede that he was still engaged in the stock brokerage business and that he did not admit the legal conclusions of the affidavit.[2]

The facts detailed by the Commission affidavit, and not disputed by appellee's proof, were as follows. Appellee was a general partner of Andresen from about November, 1962, until about March, 1966, when Andresen changed from a partnership to a corporation and appellee became its executive vice president. Andresen was a broker and dealer in securities and a member of the New York Stock Exchange and appellee was in charge of Andresen's Birmingham, Alabama office.

Beginning in February, 1966, appellee had discussions with officers of Community about Community's acquiring stock of Richmond Life Insurance Company (Richmond). Appellee was a director of Richmond and Andresen had acted as underwriter of its stock for a public offering earlier. In May or June, 1966, appellee was authorized by Community to offer Richmond shareholders the opportunity to exchange their Richmond shares for Community Class A common stock on a share-for-share basis. Appellee told the Commission investigators that he was instructed to limit the number of exchanges to twenty Richmond shareholders or less to avoid registration, and that the Community officers agreed that Community stock would be issued in the name of a single Richmond shareholder as a nominee for a group of Richmond shareholders who would be treated as a single entity.

In June, 1966, appellee began soliciting Richmond shareholders to participate in the exchange and subsequently gave Community the names of "entities" to which the Community shares should be initially issued. Appellee stated to the Commission that he informed Community of arrangement for at least some of the "entities" to consist of a single Richmond shareholder acting as a nominee for a group. He said he gave Community the exact number of Richmond shares held by each member of such groups so that the newly issued Community certificates would be broken down into amounts corresponding to holdings of the Richmond shareholders and facilitating the distribution of Community shares to the beneficial owners of the Richmond shares.

When the Community certificates were brought to appellee's office they bore no notation of any restriction as to resale or transfer. Community officers also brought what they characterized as "investment letters," which were ten identical letters addressed to the Richmond shareholders. The letter stated that the Community shares were from the company's authorized but unissued

---

2. There was also a qualification as to the data from the affidavit of Mr. Mac Clary, one of Andresen's employees. However, this evidence was admitted in affidavit form and the testimony of appellee does not dispute the facts stated by Mr. Mac Clary as to appellee's participation in the transactions.

capital stock and classified as restricted corporate capital stock. Appellee signed the letters on behalf of the ten Richmond stockholders, acknowledging receipt of the certificates and the letter, and returned them to the Community officer. He stated to the Commission that he did not show or send the letters to the Richmond shareholders or disclose to them the fact that he had signed such letters. The letters were the only documents received by Community as to the investment intent of the Richmond shareholders, and the Community officers admitted that they made no inquiry concerning such an investment intent.

Nevertheless appellee stated, and the Richmond shareholders confirmed, that the Richmond shareholders agreed to accept the Community shares for the purpose of being able to make immediate sale of them and appellee promised that he would begin to sell some of their Community shares for them as soon as the exchange was completed. Appellee admitted representing that the Community shares were resaleable and that he did not advise the Richmond shareholders that the Community shares were not registered. Appellee stated that the Community officers had told him that the Community shares could be sold in small amounts each week, so long as the sales did not depress the market.

Appellee also participated in efforts to increase and maintain artificially the price of Community stock in the over-the-counter market. Securities dealers were persuaded to enter bids in the bid sheets[3] that were higher than the demand for Community stock would warrant bidding. This bidding was done with the knowledge that Brannon Fulps, an Oklahoma broker-dealer and a defendant below, would repurchase excess Community stock at a slightly higher price. In short the bid sheets indicated a broad and active market for Community stock when actually Brannon Fulps was the only substantial buyer. The Commission's affidavit showed without contradiction that there was virtually no retail demand for Community stock during August, 1966.

Furthermore the Commission's affidavit showed that appellee was responsible for inducing former Richmond shareholders to hold their new Community stock although they had intended to resell immediately. This was accomplished by issuing take-out letters and by verbal representations that Andresen or Community officers would repurchase the new Community shares. Appellee stated to the Commission that he did this because of warnings by Community officers that large sales on the market would lower the price of Community stock and adversely affect the planned acquisitions and mergers. There was no denial of these representations, although there were variations in appellee's statements to the Commission and to the Court as to his authority from Andresen to issue the letters. When he resigned from Andresen appellee signed a statement that such transactions in Community, Richmond and other company shares occurred without the knowledge or consent of Andresen and were for his own personal benefit. Appellee signed a hold harmless agreement with Andresen for claims arising from such transactions and agreed to arrangements securing Andresen against such claims.

The gist of appellee's testimony in court was as follows. He said that in the spring of 1966 the adjusted book values of Community and Richmond stock were virtually the same and that merger of the companies appeared very natural. He testified that he did not intentionally defraud anyone and did not know until the last of August, 1966, that

---

3. Bid sheets, also known as "pink sheets," are published during each trading day Monday through Friday by the National Quotation Bureau, Inc. They reflect an indication of the wholesale prices at which securities dealers are willing to buy or sell a given over-the-counter security in transactions with other dealers. They are commonly relied on by investors as reflecting a bona fide market in the stock.

the Community stock was unregistered (although earlier statements to the Commission investigators were to the contrary). He said he had discussed the take-out letters with some Andresen officers (despite earlier admissions to the Commission that Andresen had not authorized the letters). And appellee testified that Community officers had told him that the "entity" arrangements for distribution of Community stock were not improper.

These and other similar explanations were made without denying appellee's participation in the transactions detailed in the Commission's proof. However, appellee did not agree with the legal conclusions in the affidavit. He testified he had not been in the brokerage business since August, 1966, and was a sales manager for a plastics company. The Commission stipulated that appellee had been out of the brokerage business since August, 1966.

■■ We conclude that the finding that appellee was not guilty of the violations was clearly erroneous.[4] There was no dispute as to the basic facts concerning appellee's participation in the transactions. No assessment of credibility was required as to proof of the violations. Proof of scienter or intent to defraud is not required to show violations justifying preliminary injunctive relief under such statutes. See S. E. C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237; S. E. C. v. VanHorn, 371 F.2d 181, 186 (7th Cir.). Moreover, any showing by appellee that Andresen knew of or authorized his acts was no defense.[5] We are left with the definite and firm conviction that viewed as an ultimate finding of fact or a conclusion of law, the determination was clearly erroneous. Zenith Corporation v. Hazeltine, 395 U. S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

There are, however, other findings of the Court that are clearly supported. We refer to the findings that appellee was employed since September, 1966, as a sales manager of a plastics company in Alabama; that he had not been in the stock brokerage business since August, 1966; and that he had no present intention of returning to such business in the foreseeable future. The Court made a further finding favorable to appellee on his forthrightness, candor, demeanor and good reputation. The preliminary injunction was said to be an extraordinary remedy to be issued where necessary to protect the public. It was concluded that since appellee was in no position to commit the violations, the injunction was unnecessary and would accomplish nothing but placing a stigma on appellee. This we view as the primary basis for denial of the preliminary injunction.

■■ Without doubt the trial court might have exercised its discretion to issue the preliminary injunction although the violations had ceased. See Swift & Co. v. United States, 276 U.S. 311, 48 S. Ct. 311, 72 L.Ed. 587. However, where the likelihood of any continuing menace to the public does not in reason exist, it has been recognized that the extraordinary measure of a preliminary injunction is not justified. S. E. C. v. Torr,

4. We note that appellee testified in court that he did not know until August 29, 1966, that the Community stock was unregistered, despite earlier statements to the contrary to the Commission investigators. The trial court apparently credited the testimony and it supports the general finding of no intentional fraud in these transactions in connection with the failure to disclose the nonregistration of the Community stock. Nevertheless, such proof may not support the general finding that statutory violations did not occur for the purposes of this injunction suit, since fraudulent intent is not a prerequisite for findings justifying injunctive relief, as is shown below.

5. The statutes are directed at a violation by "any person," see 15 U.S.C.A. §§ 77t (b) and 78u(e), and no authority is cited for such a theory. General agency law principles would not support the theory. See Restatement of Agency, 2d § 348.

87 F.2d 446, 449–450 (2d Cir.); S. E. C. v. Franklin Atlas Corporation, 171 F. Supp. 711 (S.D.N.Y.); Federal Maritime Commission v. Atlantic & Gulf/Panama Canal Zone et al., 241 F. Supp. 766, 777–778 (S.D.N.Y.). We are obliged to give great weight to the supported findings including the trial court's conviction that appellee did not intend further participation in the stock brokerage business in which he had not engaged for over a year before the hearing. See S. E. C. v. Franklin Atlas Corporation, supra 171 F.Supp. at 718. While we are persuaded that certain findings were clearly erroneous, we cannot say that there is a showing of abuse of the trial court's discretion in denial of the preliminary injunction and affirm that ruling. See Alabama v. United States, 279 U.S. 229, 231, 49 S.Ct. 266, 73 L.Ed. 675; Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 781 (10th Cir.); Copra v. Suro, 236 F.2d 107, 110 (1st Cir.); Celebrity, Inc. v. Trina, Inc., 264 F.2d 956, 958 (1st Cir.).

 The second issue is whether the trial court was correct in dismissing the action. In its order denying the preliminary injunction the trial court also sustained appellee's motion to dismiss the complaint. Subsequently, the Court entered a judgment stating that the Commission elected to stand on its complaint and that the action was dismissed. However, the only hearing conducted was that held on the preliminary injunction. The only further pertinent proceedings were the consideration of a motion to amend the findings and the making of the additional finding that appellee was not guilty of the violations. Otherwise there were no further proceedings or hearings prior to dismissal of the action.

We conclude that the dismissal was premature and improperly granted. There was no consolidation of the hearing on the preliminary injunction with trial on the merits pursuant to Rule 65(a) (2), F.R.Civ.P. In such circumstances although the trial court may conclude on the hearing for interlocuto-

ry relief that the suit must fail, a final dismissal is not warranted. Sooner State Dairies, Inc. v. Townley's Dairy Co. et al., 406 F.2d 1328 (10th Cir.); Brown v. Quinlan, 138 F.2d 228 (7th Cir.). The complaint clearly stated a claim on which relief could be granted and none of the procedures had been invoked under which a final dismissal might have been proper. Compare Sooner State Dairies, Inc. v. Townley's Dairy Co. et al. supra.

For these reasons the denial of the preliminary injunction is affirmed; the dismissal of the action is reversed; and the cause is remanded for further proceedings.