SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

CENCO INCORPORATED et al., Defendants.

No. 76 C 3258.

United States District Court, N. D. Illinois, E. D.

July 28, 1977.

Peter B. Shaeffer, William M. Hegan, Ronald P. Kane, Joan J. Fitzpatrick, Securities and Exchange Comn., Chicago, Ill., for plaintiff.

Ronald Wilder, Roger L. Price, Aaron, Aaron, Shimberg & Hess, Chicago, Ill., for Arthur Auman.

Rothschild, Barry & Myers, Chicago, Ill., for Elliot S. Kahn.

Edward L. Foote, Kurt L. Schultz, Winston & Strawn, Chicago, Ill., for Ralph Clarence Read.

Robert N. Caffarelli, James L. Donnelly, Jr., James W. Collins, Lawrence M. Gavin, Chicago, Ill., for defendants.

William E. Ray, Jr., Chicago, Ill., for Russell C. Rabjohns, Jr.

Fred H. Bartlit, Jr., Kirkland & Ellis, Chicago, Ill., for Cenco Inc.

John J. Enright, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Rose Packaging Corp. and David Marose.

MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

The Securities and Exchange Commission (SEC) brought this action against Cenco Incorporated (Cenco), numerous individual defendants who were previously corporate officers or employees of Cenco, and other persons and businesses who were engaged in extensive transactions with Cenco. The SEC alleges violations[1] of the securities laws by defendants and seeks to enjoin these alleged violations and to secure from the individual defendants an accounting of monies received from Cenco and other named businesses, restitution of monies expended in connection with the alleged activities, and disgorgement and restitution of any funds obtained in the alleged manipulation of stock transfers, inventory destruction and inflation, and sales inflation. Jurisdiction is predicated on Section 22(a) of the 1933 Act [15 U.S.C. § 77v(a)] and Section 27 of the 1934 Act [15 U.S.C. § 78aa]. Permanent consent injunctions have been entered into by several of the defendants and others have filed motions to dismiss which are currently pending and under advisement. Before the Court for consideration at this time, however, are only the cross-motions for summary judgment on the issue of injunctive relief which have been presented by the SEC and the corporation itself, Cenco. Both motions are supported by extensive affidavits which have been considered by the Court. The motion of the SEC to strike the second affidavit of Shirley D. Brinsfield is denied since the Court will consider only those matters properly submitted.

Cenco, a Delaware corporation with its principal offices in Chicago, has been engaged through its many subsidiaries and divisions in the manufacture, distribution and provision of services and products in the general areas of health care, education, water pollution abatement, technology and nursing homes. Cenco securities are registered pursuant to Section 12(b) of the Exchange Act, and Cenco files annual and periodic reports with the SEC as required by Section 13 of the Exchange Act. Until on or about June 26, 1975, Cenco securities were traded on both the New York and Pacific Coast Stock Exchanges, but since then all trading has been suspended.

The complaint charges that during the period from 1970 until the filing of this action,[2] certain of the directors and corporate officials of Cenco planned and carried out an extensive scheme affecting many aspects of the company's central financial operation. Specifically, the SEC alleges that deliberate inflation of inventory levels in the Cenco Medical/Health Supply Company division during the early 1970's resulted in the filing of false registration statements in 1971 and 1972, as well as the making of misleading public statements by certain individual defendants during 1972 when over $20 million of corporate securities were on the market. They further allege that in order to conceal the previous inventory inflation some of the individual defendants launched an elaborate plan of simulated inventory destruction to adjust Cenco's financial status and reports. This plan during 1974 and 1975 allegedly involved manipulation of computer listings utilized in checks on inventory and preparation of false computer information to support the claims of destruction, submission of altered documents to the auditors, presentation of inaccurate information to the Board of Directors in an effort to provide economic justification for reducing inventory levels by destruction rather than a less drastic method, and the filing of falsified reports to the SEC. Nor, according to the Commission, was this simply a paper caper, but it

---

1. Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b–5 [17 C.F.R. 240, 10b–5], section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], and sections 12(b), 13(a) and 14(a) of the Exchange Act [15 U.S.C. §§ 78*l*(b), 78m(a) and 78n(a)] and Rules 12b–20, 13a–1, 13a–11, 13a–13, and 14a–9 [17 C.F.R. 12b–20, 13a–1, 13a–11, 13a–13, and 14a–9]. The SEC brings this action pursuant to section 20(b) of the 1933 Act, [15 U.S.C. § 77t(b)] and section 21(e) of the 1934 Act, [15 U.S.C. § 78u(e)].

2. September 1, 1976.

also involved journeys by several individual defendants to warehouses around the country where they prepared documents and arranged for some portions of inventory to be shipped to a central site or to a public warehouse, from which they were later returned to company facilities. Another alleged aspect of inventory manipulation concerned shipment of some products to the defendant packaging company where they were repacked in new cartons with labels reflecting a larger content number than actually existed.

It is further alleged by the SEC that false sales records were prepared in relation to the S-P Drug Company toward the end of the financial years of 1973 and 1974 and that these resulted in the understating of the financial liabilities of the corporation on reports to the SEC. A final count charges that equipment and documents attributed to the Todd Equipment Leasing Company, at one time a subsidiary of Cenco, were used by certain individual defendants in constructing fictitious leasing agreements with another corporation owned by these persons which in turn were utilized as collateral in securing bank loans for their personal benefit.

Charges of financial and accounting improprieties were presented to the Cenco Board of Directors in June, 1975, by Thomas M. Howard, then Financial Vice-President of the Corporation. When these matters were made known to Curtiss-Wright Corporation, the beneficial owners of 16.5% of Cenco's common stock, immediate measures were taken to restore the fiscal health of the corporation and to attempt to report responsibly and correctly to the SEC. In July, 1975, the by-laws were amended to add two new members to the Board; those elected were the Chairman and President of Curtiss-Wright, T. Roland Berner and Charles E. Ehinger, Executive Vice-President of Curtiss-Wright. At another special Board meeting on July 24, 1975, Shirley D. Brinsfield was elected a Director, Chairman of the Board and Chairman of the Executive Committee; in August, 1975, he was made President and Chief Executive Officer. During further Board meetings in September, 1975, and March, 1976, other incumbent Cenco directors resigned and were replaced by persons who had no prior affiliation with the corporation or its previous management. Thus, six of the current Board members are new additions, and two others are representatives of two wholly owned Cenco subsidiaries which have not been named in this action; no current member of the Board is a defendant.

Furthermore, none of the individuals charged by the SEC is currently an employee of Cenco or is affiliated with the company in any way; those named have either resigned or were terminated by the new management upon the discovery or suspicion of their alleged wrongdoing. In addition, each of the operating subsidiaries of Cenco identified by the SEC complaint as a locus of past improprieties was divested or terminated prior to the filing of this action. Todd Equipment Leasing Corporation was sold in September, 1974, and Cenco Medical/Health Supply Division, S-P Drug Company, Inc., and most of the assets of ASR Medical Industries, Inc. were divested. In September, 1975, as an integral part of these extensive housecleaning measures, a new law firm was retained to act as special counsel to Cenco, to investigate any alleged improprieties, to prosecute claims growing out of these activities on behalf of the corporation, to defend the company in legal actions against it, and to supervise financial publications and filings required from Cenco. In January, 1976, a new auditing firm was employed to review Cenco accounts in an effort to correct and revise erroneous prior financial statements. During the entire period of the SEC investigation, Cenco has provided the Commission with full and free access to all books, records, and employees under its control, and has offered its fullest cooperation. Also, since August, 1975, Cenco has itself utilized the services of the international detective agency, Intertel, to investigate possible fraudulent diversions of Cenco assets and property by former management officials or other persons.

■ The SEC has sought an injunction against Cenco pursuant to the authority of

§ 20(b) of the 1933 Act [15 U.S.C. § 77t(b)] and § 21(e) of the 1934 Act [15 U.S.C. § 78u(e)] which provide that:

> [w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts of practices which constitute a violation [of the securities laws or rules or regulations thereunder, the SEC may apply to the district court] to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

The language of the statutes (". . . is engaged or about to be engaged . . .") directs that attention be given by the courts both to present and past activities as well as to possible future actions in assessing the Commission's need for injunctive relief. Prior to the decision of the Supreme Court in *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) the majority view of the federal courts was that a determination of past negligence could support an injunction sought by the SEC under the authority of their specific statutory prerogative. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975); *SEC v. Dolnick*, 501 F.2d 1279 (7th Cir. 1974); *SEC v. Pearson*, 426 F.2d 1339 (10th Cir. 1970). A minority view held recklessness to be the standard. *SEC v. Coffey*, 493 F.2d 1305 (6th Cir. 1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975).

However, once an evaluation of previous conduct has been made, the Commission must also demonstrate further that defendants "past behavior gives indication that without injunctive measures they might again engage in such activities." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 at 807 (2d Cir. 1975); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 at 1100 (2d Cir. 1972); *SEC v. Keller Corp.*, 323 F.2d 397 at 402 (7th Cir. 1963). In considering this question, the Supreme Court has stated:

> The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

case alive. *U. S. v. W. T. Grant and Co.*, 345 U.S. 629 at 633, 73 S.Ct. 894 at 898, 97 L.Ed. 1303 (1953).

A more complete amplification of this standard which has served as the touchstone for many courts in determining the necessity for injunctive relief is that developed by the Second Circuit:

> The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated. *SEC v. Pearson*, 426 F.2d 1339 at 1343 (10th Cir. 1970); *see also, SEC v. National Student Marketing Corp.*, 360 F.Supp. 284 at 296 (D.D.C., 1973).

Both parties to this action agree that the "totality of the circumstances" should be carefully weighed, but beyond this point their positions diverge sharply.

The SEC contends that although fraudulent past conduct does not automatically justify the issuance of an injunction, "[t]he commission of past illegal conduct is highly suggestive of the likelihood of future violations." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 at 807 (2d Cir. 1975). Furthermore, they argue that this Court may properly impute to Cenco the conduct of past management no longer associated with the company, particularly when Cenco has admitted past fraudulent activity of some degree of magnitude. In support of this position, they rely on *SEC v. Lum's, Inc.*, 365 F.Supp. 1046 (S.D.N.Y.1973). However, *Lum's* is easily distinguished from this case, for other principals in addition to the named corporate officials were also involved in the questionable leaks and still held responsible positions within the company.

■ The Commission also asserts that Cenco has been unable to make any ironclad assurances that all wrongdoing has been completely eradicated, and that protecting the public interest requires the issuance of an injunction. This course of action is necessitated, they claim, because the SEC was not able to secure testimony

from many of the individual defendants who asserted Fifth Amendment rights during the course of the Commission's investigation. Because of this, the SEC says that it cannot conclude that prior irregularities were limited to named individuals and to the presently identified corporate subsidiaries. Furthermore, the Commission calls attention to the fact that Cenco reporting forms (Form 10–K) filed by the new management team after the institution of the investigation are qualified in regard to their accuracy and completeness by a statement pursuant to Rule 12b–21 [C.F.R. § 240.12b–21].[3] The invocation of this rule, they claim, represents an admission that Cenco cannot presently comply with the securities laws and that future violations are a distinct possibility, despite any good faith intentions of the current officials of Cenco. We do not agree, for it is our understanding of the securities regulations that Cenco is shielded from liability in regard to their disclosure obligations by § 19(a) of the 1933 Act [15 U.S.C. § 77s(a)] and § 23(a) of the 1934 Act [15 U.S.C. § 78w(a)],[4] if they have in good faith disclosed everything known to them or reasonably within their ability to discover at the time when the report was prepared. There is no standard of absolute liability.

Cenco emphasizes that the purpose of injunctive relief is to deter, not to punish, and that the result to be sought by such an extreme remedy should only be prophylactic, not crippling. *SEC v. Geon Industries*, 531 F.2d 39 (2d Cir. 1976); *SEC v. Koracorp Industries, Inc.*, CCH Sec.L.Rep. ¶ 95,532 (N.D.Cal.1976); *SEC v. Parklane Hosiery Co., Inc.*, 422 F.Supp. 477 (S.D.N.Y.1976); *SEC v. Phillip A. Michael Securities, Inc.*, CCH Sec.L.Rep. ¶ 94,612 (S.D.N.Y.1974); *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct.

587, 88 L.Ed. 754 (1944). We agree that no injunction should be lightly issued, for the ramifications are very serious.

The real sanction of the injunction arises from the fact that from that point on defendants proceed at their peril in that without indictment and without a jury trial they may incur criminal sanctions in the event of further sales deemed to be a violation of the registration or the fraud provisions. In fact, except for the enforcement benefits derived from publicizing the sale of unregistered securities in violation of the Act, the foregoing ramifications of the injunction and the resulting restraining influence on issuers and promoters are the principal purposes served by an injunction since further violations will, in any event, constitute an appropriate basis for a criminal proceeding. 3A Bloomenthal, Securities and Federal Corporate Law, § 8.02[3] at 8–12 (1976 rev.)

Next, Cenco argues that even though past violations have been identified and admitted, this does not mandate the issuance of a permanent injunction under the present drastically altered circumstances. *SEC v. American Beef Packers, Inc.* [1977] CCH Sec.L.Rep. ¶ 96,079 (N.D.Neb. May 4, 1977). *SEC v. Koracorp Industries, Inc.* [1976] CCH Sec.L.Rep. ¶ 95,532 (N.D.Cal. 1976); *SEC v. Phillip A. Michael Securities, Inc.* [1974] CCH Sec.L.Rep. ¶ 94,611 (S.D.N.Y.1974); *SEC v. American Realty Trust*, 429 F.Supp. 1148 (E.D.Va.1977); *SEC v. Continental Tobacco Co. of South Carolina, Inc.* [1972] CCH Sec.L.Rep. ¶ 93,507 (5th Cir. 1972). In each of these cases, although the scope of the past alleged violations differed, the courts found that expectations of future violations which would substantiate the

---

**3.** "Information required need be given only insofar as it is known or reasonably available to the registrant. If any required information is unknown and not reasonably available, either because the obtaining thereof would involve unreasonable effort or expense, or because it rests peculiarly within the knowledge of another person not affiliated with the registrant, the information may be omitted."

**4.** § 19(a) provides that:

No provision of this subchapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission . . .
§ 23(a) provides that:
No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission . . .

need for an injunction were muted by corrective activities. In *Koracorp,* the last evidence of violations had occurred eighteen months previously; in *American Realty Trust,* the past omissions had been substantially corrected; in *Michael Securities* the court emphasized good faith efforts by the defendants to extricate their customers from a situation which represented financial loss; and in *Continental Tobacco Co.,* the institution of new management and their recognized compliance with applicable securities regulations was deemed the crucial factor. *American Beef Packers,* however, is most directly on point with the circumstances of the Cenco litigation; there the court denied the request of the SEC for an injunction against the corporation itself, despite past violations of securities laws, holding that there was no justification for such action because the company was under completely new management that had no involvement in past wrongdoings and there was no demonstration of the likelihood of future violations *by the corporation.*

> [T]here has not been shown to be a likelihood of repetition on the part of American Beef Packers, Inc. The present management was not involved in any of the violations of securities law. The present directors have not shown a propensity for securities violation . . . Not enough has been shown to justify an injunction against the company. [1977] CCH Sec.L.Rep. at p. 91,876.

We are also persuaded that the proper course of action for this Court to take in evaluating the likelihood of future violations requires us to consider the actions of the previous management and employees as distinct from those of the current Board and officers; though the corporation itself exists on a continuum in time, it does not necessarily follow that the sins of the Cenco fathers must all be visited on the corporate sons.

> Even though the "standards of public interest, not the requirements of private litigation measures the propriety and need for injunctive relief in these cases." *Hecht & Co. v. Bowles, supra,* 321 U.S. at 331, 64 S.Ct. [587], 592, "a District Court

is called upon to assess all the considerations of fairness that have been the traditional concern of equity courts." *SEC v. Manor Nursing Centers, Inc., supra,* at 1102. These principles must be weighed carefully even if there exists a "cognizable danger of recurrent violation as even that condition does not alone suffice . to authorize an injunction." *SEC v. Keller Industries, supra* [D.C., 342 F.Supp. 654], at 660. Such concerns include the nature and extent on the public interest. *Chris-Craft* [*v. Piper Aircraft Corp.,* 2 Cir., 480 F.2d 341] *supra,* at 406, citing *SEC v. Hawryn Industries Corp.,* 326 F.Supp. 943, 955–958 (S.D.N.Y.1971). Furthermore, added the District Court in *Harwyn* :

> ". . . (W)e must not forget that the issuance of an injunction can sometimes have a harmful impact on the personal reputation and legitimate business activities of defendants, *SEC v. Broadwall Securities, Inc.,* 240 F.Supp. 962, 967 (S.D.N.Y.1965) ('the adverse effect of any injunction upon defendants is, of course, a factor to be considered . . . ') *Id.* at 957.

*SEC v. American Realty Trust,* 429 F.Supp. 1148 at 1176 (E.D.Va.1977).

Furthermore, as we analyze the present and possible future conduct of Cenco, we do so in the light of the decision of the Supreme Court in *Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) that § 10(b) liability is limited in private damage actions to willful and knowing acts and does not encompass liability for negligent misstatements or omissions. In reaching this conclusion, the Court relied primarily on the expression of Congressional intent embodied in the words "manipulative", "device", and "contrivance"; "[i]n view of the language of § 10(b) which so clearly connotes intentional misconduct and mindful that the language of a statute controls when sufficiently clear in its context, further inquiry may be unnecessary." *Ernst and Ernst v. Hochfelder,* 425 U.S. 182 at 201, 96 S.Ct. 1375 at 1385 (1976). Although the Court expressly re-

served judgment as to whether scienter is a necessary element in an action for primary injunctive relief, and as to whether reckless disregard could be considered to be a form of intentional conduct for purposes of imposing liability, several recent lower court opinions have dealt with these issues. *SEC v. Bausch and Lomb,* 420 F.Supp. 1226 at 1241 (S.D.N.Y.1976) specifically held that scienter was an essential element in an SEC enforcement action, since if statutory construction requires scienter in private damage actions, it also must mandate proof of scienter in an injunctive action brought under the same statute; this standard should be equally applied whether the litigant is a private person or the Commission. *SEC v. American Realty Trust,* 429 F.Supp. 1148 (E.D.Va.1977) adopts this reasoning and extends it to the similar anti-fraud provisions of Section 17(a) of the 1933 Act. (But *see SEC v. World Radio Mission,* 544 F.2d 535 (1st Cir. 1976). Both of these courts also enlarge the definition of scienter to include "the kind of recklessness that is equivalent to willful fraud." *SEC v. Bausch and Lomb,* 420 F.Supp. 1226, at n.4 1243; *SEC v. American Realty Trust,* 429 F.Supp. 1148, at 1155 n.7.

The Seventh Circuit has clearly held that recklessness is sufficient to establish scienter in a private cause of action. *Wright and Beneficial Standard Corporation v. Heizer Corp. and International Digisonics Corporation,* No. 76–1140 et al., 560 F.2d 236 (7th Cir. 1977); *Sanders v. Nuveen and Co.,* 554 F.2d 790 (7th Cir. 1977). *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir. 1977). In each case the court affirmatively relied upon the definition of recklessness in the context of an omission in *Franke v. Midwestern Oklahoma Development Authority,* 428 F.Supp. 719, at 725 (W.D.Okl.1976):

> Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the

actor must have been aware of it. *Wright and Beneficial Standard Corporation v. Heizer Corp. and International Digisonics Corporation,* No. 76–1140 et al., 560 F.2d 236 at 251 (7th Cir. 1977).

■ We are convinced that these cases of the Seventh Circuit and *SEC v. Bausch and Lomb* correctly include recklessness within the sphere of intentional conduct. In addition we are persuaded that this expanded definition of scienter should be applied to injunctive suits instituted by the SEC. *SEC v. Bausch and Lomb,* 420 F.Supp. 1226 (S.D.N.Y.1976).

■ As we have utilized this developing standard in our estimation of the likelihood of future violations based on an assessment of present Cenco conduct, as distinct from the undisputed past corporate violations, we cannot find that injunctive relief is warranted. Cenco affidavits demonstrate that massive housecleaning procedures have been pursued with vigor, that all evidences of irregularities have been dealt with after discovery, and that reporting regulations have been adhered to as scrupulously as possible in view of the fact that some data is still unavailable because of past falsification of underlying records.

The SEC in its responsive affidavits identifies no intentional or willful omissions or misstatements on the part of current Cenco officers and directors, nor does it point to any evidence of reckless disregard of statutory requirements governing corporate activity; at the most the Commission expresses only its concern that some future negligence might result in further violations. On the basis of this mere possibility we cannot authorize issuance of a permanent injunction which would allow for imposition of more severe sanctions than might be imposed in an original enforcement proceeding establishing liability.

The motion of plaintiff SEC for summary judgment is denied. The motion of defendant Cenco for summary judgment is granted.