SECURITIES AND EXCHANGE COMMISSION

v.

PENN CENTRAL CO. et al.

Civ. A. No. 74–1125.

United States District Court, E. D. Pennsylvania.

April 18, 1978.

---

Benjamin Greenspoon, Wm. H. Kuehnle, Neil S. Lang, Brian B. McMenamin, Washington, D. C., for Securities and Exchange Commission.

Cecil A. Morgan, David B. Owen, Fort Worth, Tex., Gerald L. McMahon, Seltzer Caplan Wilkins & McMahon, San Diego, Cal., for Wm. Ray.

Darrell E. Jordan, James S. Ramsey, Jr., Gordon B. Russell, Jordan, Ramsey & Hill, Dallas, Tex., for Wm. Baker.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In our opinion and order of December 28, 1976, 425 F.Supp. 593, we denied the motions of defendants Baker, Bevan, Caldwell and Ray to dismiss and for summary judgment on the claims of the Securities and Exchange Commission for injunctive relief and disgorgement based on alleged violations of the federal securities laws. We now decide that the motions to dismiss, motions for summary judgment, motions for reconsideration, motions for change of venue and motions for certification under Title 28 U.S.C. § 1292 which have been submitted by Baker and Ray[1] must be denied.

Defendants have advanced a plethora of arguments in support of their motions. Several of these merit discussion,[2] in that they either address points which we did not dwell on in our original opinion or raise entirely new legal issues.

All of these contentions concern the Sixth Cause of Action, Amended Complaint at ¶¶ 60–66, which alleges that defendants violated Section 17(a) of the Securities Act of 1933 as amended (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 as amended (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5) promulgated under § 10(b). The thrust of this cause of action is that the defendants engaged in a scheme to misrepresent the financial condition of several corporations by, *inter alia*, reporting income improperly, stating incorrectly that increases in reported income were expected to continue and failing to disclose weaknesses in financing. Amended Complaint at ¶ 62. This scheme is alleged to have resulted in misrepresentations and omissions of material facts to purchasers and sellers of securities. *Id.* at 61. It is alleged that defendants entered into this scheme because they were parties to employment agreements with two of these corporations, of which they were officers and directors, compensating them on the basis of reported income, *id.* at ¶¶ 63–64, and that they received payments under those agreements which they would not have received had they not made the misrepresentations and omissions which allegedly violated federal securities laws. *Id.* at ¶ 65.

Defendants have devoted considerable effort in their briefs to formulating theories about the relationships between alleged misstatements and injuries to investors necessary for the SEC to state a claim under the antifraud provisions of the securities laws. As we deem it relevant, their argument is twofold: (1) the Amended Complaint avers defendants engaged in a

---

1. Bevan, Caldwell and Wynne have entered into settlement with the Securities and Exchange Commission.

2. We will address only summarily the summary contentions raised in defendant Ray's motion for change of venue. Ray asserts that because venue is not properly laid in the Eastern District of Pennsylvania, this case should be transferred to the United States District Court for the Northern District of Texas, since "most of" Ray's activities alleged in the Amended Complaint occurred in that district. We disagree; venue is proper in this court. 15 U.S.C. § 78aa. *See also Dopp v. American Electronic Laboratories, Inc.*, 55 F.R.D. 151 (S.D.N.Y.1972); *Lorenz v. Watson*, 258 F.Supp. 724 (E.D.Pa.1966).

scheme to defraud two corporations by inducing the corporations to compensate them excessively, but because this alleged fraud was not in connection with the purchase or sale of securities, it is beyond the ambit of the federal securities laws, and (2) the SEC's claim for disgorgement by defendants of the monies received under these agreements exceeds the relief possible in an enforcement action because those monies are not sufficiently related to any fraud in connection with the purchase or sale of a security. We will consider these contentions in turn. In addition, we will address defendants' arguments that summary judgment should be granted because the plaintiff has failed to allege the required scienter and that if we deny their motions such denial should be certified for interlocutory appeal.

## I. "INTERNAL MISMANAGEMENT" CLAIM and § 10(b):

### A. "In Connection With" Requirement.

■ Section 10(b) of the Securities Exchange Act covers fraud "in connection with" the purchase or sale of securities.[3] The purchase or sale requirement of § 10(b) contemplates a causal connection between the alleged fraud and the purchase or sale. In a sense, the requisite connection allegedly existed in this case in its most conventional form, since plaintiff alleges that defendants made material misrepresentations and omissions which defrauded purchasers and sellers of the securities of four corporations. Amended Complaint at ¶ 61.[4] It is these misrepresentations and omissions, along with the materiality of them to the reasonable investor in the securities of these corporations, which the SEC must establish in an enforcement action. *See* 2 A. Bromberg, *Securities Law, Fraud, SEC Rule 10b–5* § 10.1, at 235 (1967).

---

**3.** The distinction between § 10(b) and § 17(a) of the Securities Act as it is relevant to this case is discussed in Section II, *infra*.

**4.** In this sense, this case differs dramatically from the more unusual fact patterns in the cases cited by defendants. In *Tully v. Mott*

■ Defendants advance the argument that the acts alleged in the Sixth Cause of Action, characterized as defrauding the corporations which paid them, constituted "internal mismanagement." Contending that such acts are not actionable under the federal securities laws, defendants cite *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), in which the Supreme Court observed in dicta that "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal mismanagement." *Id.* at 12, 92 S.Ct. at °169. In that case, however, the Court rejected the claim of "mere internal mismanagement" and held that § 10(b) covered deceptive practices "touching [the] sale of securities." *Id.* at 12–13, 92 S.Ct. 165. We hold on two grounds that the fraud alleged in this case is sufficient to state a cause of action for enforcement. First, as we have noted, the allegations contained in ¶ 61 state that this fraudulent scheme "touched" with pristine directness purchases and sales of securities. Second, even accepting defendants' characterization of the Sixth Cause of Action as an averment that they schemed to make misrepresentations of income to the corporations and that these misrepresentations were transmitted to the investing public in some manner not directly involving defendants, we believe equitable relief can be granted so long as plaintiff shows that defendants' fraud proximately caused material misrepresentations or omissions violative of the securities laws; as part of that requirement, the misrepresentations or omissions must have been the foreseeable results of defendants' conduct.

■ As the Third Circuit has observed, a "classic 10b–5 violation" occurs when a defendant has "caused the corporation to issue materially false statements". *Landy v. Federal Deposit Insurance Corp.*, 486 F.2d 139, 163 (2d Cir. 1973). Should we find that

*Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976), for instance, the court held that alleged fraud in refusing to sell shares to plaintiffs and inducing others not to sell to them was not causally related to any purchase or sale.

the misrepresentations to the corporations and to the investing public in fact occurred and involved conduct which was virtually indistinguishably linked in a causal chain, we would certainly find that the fraud "touched" the purchase or sale of securities. *See, e. g., Butler Aviation International, Inc. v. Comprehensive Designers, Inc.*, 307 F.Supp. 910 (S.D.N.Y.1969), *aff'd*, 425 F.2d 842 (2d Cir. 1970). Beyond that, the precise meaning of causation in this context does not appear to be settled. The most cited statement of the requisite causal relationship between a defendant's conduct and dissemination (or the lack thereof) of information to the investing public is the Second Circuit's holding that this element is satisfied "whenever assertions are made . . . in a manner reasonably calculated to influence the investing public." *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) (en banc), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). We agree that this is substantially the proper meaning of the "in connection with purchase or sale" requirement in this context, but we prefer the language of probable cause and foreseeability because the term "calculated" (1) suggests that the standard is a subjective one, turning on the calculation of an individual defendant, whereas we believe the proper test is objective, and (2) invites confusion with the scienter requirement of Rule 10b–5, *see* Section IV *infra*, which we feel is an analytically distinct, although factually related, element under the current law.

█ As evidence of the fact that Judge Waterman's opinion in *Texas Gulf Sulphur* is consistent on this point with our analysis, moreover, we point to the following language:

"Therefore it seems clear from the legislative purpose Congress expressed in the Act, and the legislative history of Section 10(b) that Congress when it used the phrase 'in connection with the purchase or sale of any security' intended only that the device employed, whatever it might be, be of a sort that would *cause* reasonable investors to rely thereon . . . ." 401 F.2d at 860 (emphasis added).

We believe that the required nexus between fraudulent conduct and the issuance of material misrepresentations to the investing public under Rule 10b–5 is most precisely and properly defined with reference to the concept of proximate cause, which courts have borrowed from tort law to define the necessary relationship between fraudulent conduct and damages recoverable under Rule 10b–5, *Miller v. Schweickart*, 413 F.Supp. 1059, 1067 & n. 17 (S.D.N.Y.1976) (collecting cases). To the extent that this formulation leads to broader boundaries of liability than some other definitions of "causation" might, *see generally* 2 A. Bromberg, *Securities Law, Fraud, Rule 10b–5* § 8.7 (1967), we conclude it is mandated by the liberality with which the requirements of § 10(b) must be construed in an enforcement action. *See Kahan v. Rosenstiel*, 424 F.2d 161, 173 (3d Cir. 1970), *quoting SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 193, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

We consider our conclusion consistent, furthermore, with the Third Circuit's reasoning in *Landy v. Federal Deposit Insurance Corp.*, where the court held that an accountant's alleged misstatements in financial statements concerning a corporation were not actionable in a private damage suit under Rule 10b–5. The court said that the reports containing these misrepresentations had not been given to any members of the plaintiff class except the named plaintiff and that it was neither foreseen (nor, it was implied by use of the "reasonably calculated" language from *SEC v. Texas Gulf Sulphur*, reasonably foreseeable) by the accountant that these reports would be used by anyone outside the corporation. *Id.* at 167–69. The limitations on liability that are imposed by foreseeability are in this context very closely related, both doctrinally and in effect, to those which result from the requirement of proximate cause. *See* 2 F. Harper and F. James, *The Law of Torts* § 20.5, at 1137, 1141 (1956); W. Prosser, *The Law of Torts* § 43 (4th ed. 1971). Moreover, the *Landy* court cited with approval *Wessel v. Buhler*, 437 F.2d 279 (9th Cir.

1971), where Judge Hufstedler concluded on facts similar to those of *Landy* that alleged misrepresentations in an accountant's financial statement could not create a Rule 10b–5 cause of action because they were not "reasonably likely to mislead investors to their detriment." *Id.* at 282. There was, the court found, no proof offered at trial that the accountant created (*i. e.*, legally caused) the ultimate "fiction" (*i. e.*, the misleading prospectus). *Id.*

We believe that the Sixth Cause of Action alleges sufficiently that defendants' fraudulent conduct, *i. e.*, the misrepresentations of income to the corporations, proximately caused material misrepresentations to be made to investors. Moreover, we are unable to conclude at this time that as a matter of law the alleged fraud by defendants did not proximately cause the alleged material misrepresentations to investors, and therefore we cannot grant defendants' motion for summary judgment. If it did so "create" the misrepresentations, the defendants' conduct clearly would amount to far more than "mere internal mismanagement". It would, we conclude, "touch" the purchase and sales of securities sufficiently for the SEC to prevail.

### B. The "Internal Mismanagement" Non-Exception.

■ We find, furthermore, that neither logic nor authority establishes any positive exception to the scope of the federal securities laws based on "internal mismanagement". The Supreme Court's dicta in *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. at 12, 92 S.Ct. 165, it should be noted, were that transactions involving "*no more than* internal mismanagement" were not actionable under § 10(b) (emphasis added). Judicial discussions of internal mismanagement and limitations on the scope of the securities laws arise in opinions holding that acts are beyond the reach of those statutes because some element required thereunder is lacking. For example, defendants cite *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973), in which the Third Circuit observed that "not

every plan generating allegations of fraud is a violation of federal securities law." *Id.* at 695. The holding in *Lino*, however, was that certain promissory notes issued by an individual were not "securities" and that those notes were not "purchased" for investment within the meaning of those terms in the Securities Exchange Act. Similarly, in *SEC v. Fifth Avenue Coach Lines, Inc.*, 289 F.Supp. 3 (S.D.N.Y.1968), *aff'd*, 435 F.2d 510 (2d Cir. 1970), the court held an officer's fraud upon a corporation with regard to loan transactions between him and it did not give rise to a cause of action under federal law although he had breached his fiduciary duty. The holding again, however, was that there was no "security" as required by the Securities Exchange Act. *Id.* at 38.

■ Our grant of summary judgment as to certain § 10(b) claims of private parties in *In re Penn Central Securities Litigation*, 347 F.Supp. 1327 (E.D.Pa.1972), *modified*, 357 F.Supp. 869 (E.D.Pa.1973), *aff'd*, 494 F.2d 528 (3d Cir. 1974), is inapposite for analogous reasons. While we and the Third Circuit both cited *Superintendent of Insurance v. Bankers Life & Casualty Co.*, the latter for the proposition that § 10(b) does not reach mere internal mismanagement, the holding in that case was that plaintiffs "were not open market purchasers or sellers during the period of defendants' alleged illegal activity" and therefore "may not recover *damages* under § 10(b) or Rule 10b–5." 347 F.Supp. at 1339 (emphasis added). Because the case sub judice is not a private damage suit but rather an SEC enforcement action, there is of course no requirement stemming from the "in connection with the purchase or sale" language of § 10(b) that the plaintiff be a purchaser or seller. *Cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Hence, the § 10(b) element deemed lacking in *In re Penn Central Securities Litigation* is not even required here.

■ Plaintiff's allegation that the defendants' scheme involved material misrepresentations which defrauded purchasers

and sellers of securities is therefore sufficient to state a cause of action for § 10(b) enforcement. Furthermore, defendants' characterization of these acts as internal mismanagement, based on the alleged incentive for that scheme, is irrelevant to the extent that it reveals the fraud alleged here afflicted the corporations as well as purchasers and sellers of securities. In no sense does it constitute a defense to plaintiffs' claim of liability under the federal securities laws, so long as the requisites for that liability are established. We hold that a fraudulent scheme which proximately causes material omissions or misrepresentations to be made to purchasers and sellers is sufficient to state a violation of Rule 10b–5 in an enforcement proceeding and decline to speculate at this point what pattern of facts might be sufficient to establish that connection in this case. See 6 L. Loss, *Securities Regulation* 3631 (1969 Supp.).

## C. The Impact of Green.

We have found that defendants' alleged conduct in violation of the securities laws is not immunized from liability by being part of a scheme of corporate mismanagement, elements of which may be actionable under state law. Reinforcing our determination is the recent Supreme Court decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), which discussed at length the boundaries of § 10(b) liability where a breach of the fiduciary duty owed to shareholders was involved. Defendants argue that the Court's holding and concern that the "extension of the federal securities laws would overlap and quite possibly interfere with state corporate law," *id.* at 479, 97 S.Ct. at 1303, support their motion. We disagree. In holding that a complaint which alleged that majority shareholders forced minority shareholders to sell securities pursuant to Delaware's short-form merger law at an unfair price, in breach of their fiduciary duty, failed to state a cause of action under § 10(b) and Rule 10b–5, the Court focused on the lack of any manipulative device in effecting the freeze-out of minority shareholders. *Id.* at 476, 97 S.Ct. 1292. *Green* is

not directly controlling, since the issue of whether the alleged conduct was manipulative or deceptive has not been raised here. The Court did note, however, two factors which have general applicability as to whether a cause of action should lie in Rule 10b–5 cases when a breach of fiduciary duty is alleged. The first was whether the alleged conduct violated the fundamental purpose of the Securities Exchange Act, which the Court deemed to be implementation of a policy of full and fair disclosure, or a more tangential concern of the statute, such as the fairness of transactions after disclosure had occurred. The latter was involved in *Green*, whereas defendants' alleged misrepresentations in this case directly contravened the essential function of the act. *See also id.* at 471 n. 11, 97 S.Ct. 1292.

Secondly, the Court pointed to the existence *vel non* of a traditional state law remedy for the alleged wrong, *id.* at 478, 97 S.Ct. 1292, *citing Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 40, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) and *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Defendants here have asserted that the frauds they allegedly perpetrated upon the corporations in order to increase their compensation would give rise to causes of action by those corporations under state law. Precluding the availability of federal claims on the basis of alternative remedies as discussed in *Piper* and *Green* is a narrower doctrine, however, in that the Court spoke of relegating the federal plaintiffs to suits under state-law causes of action created by state law. *Piper v. Chris-Craft Industries*, 430 U.S. at 41, 97 S.Ct. 926, *quoted in Santa Fe Industries v. Green*, 430 U.S. at 478, 97 S.Ct. 1292. It has not been asserted or suggested in this case that the federal court plaintiff, the SEC (or for that matter, the purchasers and sellers allegedly defrauded by defendants), could redress the wrongs under state law. On the contrary, we believe the Supreme Court's analysis suggests that defendants' alleged conduct, even as they characterize it, is remedial under the Securities Exchange Act and Rule 10b–5.

## II. SECTION 17(a):

▮ Section 17(a) of the Securities Act of 1933, by contrast, reaches only fraud "in the offer or sale" of securities. Quite clearly, the omission of the words "in connection with" makes the scope of § 17(a) narrower than that of § 10(b) in that the former requires a closer relationship between the fraud and the securities transaction. We would not go so far, however, as to accept the defendants' contention and the court's conclusion in· *Financial Programs, Inc. v. Falcon Financial Services, Inc.*, 371 F.Supp. 770, 775 (D.Ore.1974), that only "sellers of securities" (*i. e.*, those personally involved in the sales) come within the ambit of § 17(a), at least insofar as SEC enforcement proceedings are concerned. The facts regarding the extent of the defendants' involvement in the offer or sale of securities, beyond the fact that they did not personally sell securities, are both sketchy and disputed at this point. Furthermore, we know of no controlling case imparting to us a clear standard of the relationship required under § 17(a) between the fraud and the securities transaction.

▮ We consequently will deny the defendants' motion for summary judgment as to the allegation of violations of § 17(a). We are disposed to do so particularly in light of the fact that granting the motion as to § 17(a) in no way would diminish the scope of the trial or the eventual liability or relief in this case, so long as the § 10(b)-based claim remained.

The balance of this opinion deals with the issues raised by defendants' motions for summary judgment and for reconsideration under the more fully developed law of § 10(b) and Rule 10b–5, which we perceive as the heart of this case, with the caveat that much of the authority dealing with these issues blurs the distinctions between § 17(a) and § 10(b), and understandably so. We must emphasize, however, that the plaintiff will have to demonstrate at trial a more direct involvement in the offer or sale of securities to make out a § 17(a) violation than is necessary to establish a violation of § 10(b) and Rule 10b–5. *See* 1 A. Bromberg, *Securities Law, Fraud, SEC Rule 10b–5* § 2.3(300), at 24 (1971 Supp.).

## III. DISGORGEMENT:

▮ Defendants contend that the relief sought by plaintiff, an injunction including the disgorgement of payments received from the corporations as a result of the scheme to inflate reported profits, cannot be granted on the grounds, *inter alia*, that various causal connections between these payments and securities transactions are not alleged. What these arguments fail to perceive is that determining the scope of the equitable remedy of disgorgement entails an analysis separate from assessing whether the SEC has stated a cause of action in an SEC enforcement case. Should we determine that any defendant violated § 17(a) or § 10(b), we have the discretion to fashion whatever equitable relief we deem necessary to deprive defendants of all gains flowing from the wrong. *J. I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971); *SEC v. Golconda Mining Co.*, 327 F.Supp. 257, 259–60 (S.D.N.Y. 1971). That remedy can include disgorgement of proceeds from the wrongful conduct, *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972).

▮ The amount to be disgorged is not limited as a matter of law to the damages inflicted upon purchasers and sellers. The SEC does not stand in the shoes of the purchasers and sellers who it asserts were defrauded. While we know of no case going so far as to require disgorgement of compensation to corporate officers and directors, neither have we found any case in which the facts revealed such compensation to be the result of fraud violating the securities law as directly as those alleged here. As the facts are alleged, the excesses in compensation sought by plaintiff seem indeed to have "flowed" from the wrong. We are unable, consequently, to say at this point that none of the compensation was part of defendant's wrongful gain. We

find the case for restitution under the alleged facts to be more compelling than in *SEC v. Galaxy Foods, Inc.*, 417 F.Supp. 1225 (E.D.N.Y.1976), for example, in which the court held that a corporation and its executives violated the securities laws in the sales of franchises from which they received salary overrides. With respect to one violator, the court deemed it inequitable "under the circumstances" to make him disgorge his full salary but required disgorgement of the value of a franchise he had been given free of charge. *Id.* at 1249. We are ill equipped without knowledge of the circumstances in this case to determine what is equitable under them, and therefore we must reserve judgment until trial as to the proper relief.[5]

## IV. SCIENTER:

Defendants contend that plaintiff has failed to allege scienter as an element of the cause of action under § 10(b) and Rule 10b–5 and that scienter is a necessary element of an enforcement action by the SEC.

We disagree with the first part of defendants' assertion and reserve judgment as to the second. It is true that the amended complaint does not allege in a single terse statement that defendants caused the misrepresentations to be made with an "intent to deceive, manipulate or defraud," which allegation is required in private damage actions under § 10(b) and Rule 10b–5, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Amended Complaint does track, however, the language of § 10(b) and Rule 10b–5 by alleging that defendants employed "devices, schemes and artifices to defraud" and has engaged in practices which have operated as a "fraud and deceit" upon purchasers of Penn Central Transportation Company securities. Amended Complaint at ¶ 61. It further alleges that defendants engaged in a "scheme" to misrepresent and conceal Penn Central's financial condition in various ways, *id.* at ¶¶ 62–63, and that the compensation agreements with one corporation provided the "incentive" for the scheme. *Id.* at ¶ 63.

We have stated in the past our conviction that complaints should be construed liberally when faced with challenges to their specificity, in light of the notice-pleading mandate of F.R.Civ.P. 8, *Denny v. Carey*, 72 F.R.D. 574, 578–79 (E.D.Pa.1976). In light of that conviction and the provision of F.R.Civ.P. 9(b) that "intent, knowledge, and other conditions of mind may be averred generally", we believe the allegations noted above amount to an allegation of the intent required under *Hochfelder*—that is, either the "intent to say something, that is expected to be relied on, that is not believed to be true, or, if strictly true, is hoped will be understood in an untruthful sense," *SEC v. World Radio Mission, Inc.*, 544 F.2d 535, 540 (1st Cir. 1976), or recklessness, *Coleco Industries, Inc. v. Berman*, 567 F.2d 569 (3d Cir. 1977).[6] To say that defendants had an incentive to scheme and in accordance with that incentive schemed to misrepresent and conceal seems to us tantamount to averring they had such an intent.[7] Since there is a

---

**5.** Defendants have also asserted that this disgorgement would be a penalty rather than restitution for a wrong. *See SEC v. Texas Gulf Sulphur Co.*, 446 F.2d at 1308. We consider the distinction to turn on the circumstances surrounding the violation, and we are unable to say at this time disgorgement would be a penalty.

**6.** The Third Circuit did not in its brief opinion in *Coleco* adopt or endorse any particular definition of recklessness, holding that a finding of recklessness was justified under any of the formulations that had been applied by courts. The most often used definition, and in our mind the most reasonable, is that first stated in *Franke v. Midwestern Oklahoma Development*

*Authority*, 428 F.Supp. 719, 725 (W.D.Okla. 1976):

"highly unreasonable [conduct], involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."

**7.** This case thus resembles *SEC v. Wills*, [1977–78 Transfer Binder] *Fed.Sec.L.Rep.* (CCH) ¶ 96, 102 (D.D.C.1977), in which the court deemed scattered references to omissions, deceptions, concealments and failures to disclose as sufficient, taken together, to constitute an allegation of scienter, and diverges from *Wolford v.*

factual issue as to whether defendants had the scienter required under Rule 10b–5, we cannot grant summary judgment on this ground.

The issue of whether scienter is required at all in an SEC enforcement action explicitly was left unresolved by the Supreme Court in *Hochfelder*, 425 U.S. at 193 n. 12, 96 S.Ct. 1375. We note that the division of authority on this issue has survived that decision. Some courts have concluded that the *Hochfelder* rationale ought to be applied in this context, *e. g., SEC v. Cenco Inc.*, 436 F.Supp. 193 (N.D.Ill.1977); *SEC v. American Realty Trust*, 429 F.Supp. 1148 (E.D.Va.1977); *SEC v. Baush & Lomb, Inc.*, 420 F.Supp. 1226 (S.D.N.Y.1976). Others have held scienter unnecessary upon determining that the policy of public protection underlying SEC enforcement actions differentiates these cases from private damage suits and distinguishes *Hochfelder*, *e. g., SEC. v. Universal Major Industries Corp.*, 546 F.2d 1044 (2d Cir. 1976), *cert. denied sub nom. Homans v. SEC*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); *SEC v. World Radio Mission, Inc.*, 544 F.2d 535 (1st Cir. 1976); *SEC v. Shiell*, [1977–78 Transfer Binder] *Fed.Sec.L.Rep.* (CCH) ¶96, 190 (N.D.Fla.1977). *See also* Comment, *Scienter and SEC Injunction Suits*, 90 Harv.L. Rev. 1018, 1223–25 (1977). Our determination that scienter has been alleged and survives as a genuine issue of fact in this case makes it unnecessary for us to decide whether it must be proved at this point: notwithstanding the SEC's legal contention that scienter is unnecessary, we assume that showing the intent as defined in *Hochfelder, World Radio Mission* and *Coleco* will be a part of plaintiff's case since it has been alleged. Moreover, we deem it unwise, as did Judge Gesell in *SEC v. Wills*, to issue an advisory opinion as to this issue at this stage of the litigation. Given the volatile nature of this area of securities law and the suddenness with which the judicial tide might turn in either direction, we ought not bind ourselves now by deciding the consequence of the SEC's failure to establish scienter at trial.

For the same reason, we do not now decide precisely what degree of scienter, if any, is necessary for plaintiff to prevail in an enforcement action. In particular, it is possible that the plaintiff will demonstrate that one or both defendants intentionally misrepresented facts to the corporations in order to enhance their compensation, which misrepresentations in turn caused material misrepresentations to be made to purchasers and sellers of securities with neither the intent nor recklessness of defendants. These facts would present a situation standing between the categories of negligence and scienter as *Hochfelder* presents them, and we shall not issue an advisory opinion as to the legal consequences of a hypothetical fact pattern.

## V. INTERLOCUTORY APPEAL:

█ Defendants request that we certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) our denial of their motions. That statute permits us to certify the appeal of an order if (1) it involves a controlling question of law, (2) there is substantial ground for difference of opinion and (3) immediate appeal may materially speed termination of the litigation. The sole legal issue in this case which we perceive as satisfying the difference of opinion criterion of § 1292(b) is the degree of scienter, if any, required in an SEC enforcement action under § 17(a), § 10(b) and Rule 10b–5. As we have noted, however, resolution of that question could not terminate the action in this court, nor would it significantly hasten its end, since scienter has been alleged and trial would still be necessary to determine the factual issues of what knowledge and intent were present. To put it another way, we lack the "background of determined and immutable facts" necessary for certification under § 1292(b). 9 *Moore's Federal Practice* § 110.22[2], at 261 (2d ed. 1975).

---

*Equity Resources Corp.*, 424 F.Supp. 670 (S.D. Ohio 1977), in which the mere tracking of the

statutory language was deemed not to allege sufficiently scienter in a private damages suit.