**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**JOS. SCHLITZ BREWING COMPANY, Defendant.**

No. 77–C–497.

United States District Court,
E. D. Wisconsin.

June 7, 1978.
As Amended June 16, 1978.

Robert M. Romano, Martin H. Aussenberg, Terry B. Dowd, Securities and Exchange Commission, Washington, D. C., for plaintiff.

Willkie, Farr & Gallagher by Anthony F. Phillips, Robert J. Kheel, Philippe M. Salomon, Paula J. Mueller, Robert E. Bartkus, New York City, and James M. Clabault, Milwaukee, Wis., Gen. Counsel, Jos. Schlitz Brewing, for defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

## I. INTRODUCTION

This action is before me on the defendant's motions (1) to dismiss the complaint pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction; (2) to dismiss the complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted; or, alternatively, (3) for a stay of this action pending the resolution of certain criminal proceedings against Schlitz; and (4) to strike certain allegations from the complaint pursuant to Rules 11 and 12(f), Federal Rules of Civil Procedure. The motions will be denied.

This is an action brought by the Securities and Exchange Commission (Commission) against the Jos. Schlitz Brewing Company (Schlitz) pursuant to section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b) and sections 21(d) and 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d) and 78u(e), to restrain and enjoin Schlitz from engaging in practices alleged to violate the federal securities laws. Schlitz is a Wisconsin corporation engaged in the business of selling beer and malt beverages whose securities are registered with the Commission and are publicly traded.

The complaint sets forth three causes of action. The first cause of action alleges violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. 240.10b-5. Schlitz is alleged to have failed to disclose a nationwide scheme to induce retailers of beer and malt beverages to purchase Schlitz' products by making payments or furnishing things of value of at least $3 million in violation of federal, state and local liquor laws. It is also charged that the defendant failed to disclose its alleged participation in violations of Spanish tax and exchange laws in connection with transactions with certain Spanish corporations described as affiliates. Schlitz allegedly falsified its books and records with respect to these payments and transactions. By failing to disclose these matters, Schlitz' financial statements, registration statements, periodic reports and proxy solicitation materials filed with the Commission are said to be materially false and misleading. Schlitz is also charged with aiding and abetting violations of sections 17(a) and 10(b) by the public companies which allegedly received unlawful inducement payments.

The second and third causes of action incorporate the allegations of the first cause of action and allege, respectively, violations of section 13(a), 15 U.S.C. §§ 78m(a) and 14(a), 15 U.S.C. § 78n(a) of the Securities Exchange Act of 1934.

## II. SUBJECT MATTER JURISDICTION

Schlitz contends that the Commission lacks the jurisdiction to bring this action because the acts and practices upon which the action is predicated fall outside its regulatory jurisdiction which is limited to "acts

or practices which constitute or will constitute a violation" of the federal securities laws. 15 U.S.C. §§ 77t(b); 15 U.S.C. § 78u(d). The inducement payments which Schlitz is alleged to have made to its customers may violate the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.*, the enforcement of which rests exclusively with the secretary of the treasury, through the bureau of alcohol, tobacco and firearms and the attorney general. On March 15, 1978, a federal grand jury sitting in the eastern district of Wisconsin returned an indictment charging Schlitz with, inter alia, conspiracy and substantive violations of the Federal Alcohol Administration Act. Accordingly, Schlitz contends that this action is an impermissible encroachment on and a duplication of the functions assigned by statute to the bureau of alcohol, tobacco and firearms and the attorney general.

 I am unable to accept the defendant's characterization of this action as one to enforce the Federal Alcohol Administration Act. The Commission seeks by this action to enforce the disclosure requirements of the federal securities laws for the protection of shareholders and the investing public generally, a function clearly within the Commission's regulatory authority. Moreover, it is well established that more than one governmental agency may investigate the same conduct simultaneously and bring simultaneous civil and criminal actions based on such conduct so long as the respective remedies are not mutually exclusive and there is an otherwise rational basis for their individual proceedings. *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 693–695, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *Warner-Lambert Co. v. Federal Trade Commission*, 361 F.Supp. 948, 952 (D.D.C.1973). Since the basis for this action by the Commission is the alleged failure of Schlitz to disclose its potentially criminal marketing practices in its filings with the Commission, mailings to shareholders and press releases, I believe that the Commission has a rational basis for instituting this enforcement proceeding.

Attempting to demonstrate that the Commission is acting beyond its jurisdiction, Schlitz emphasizes that no statute, rule or regulation specifically requires that a corporation report its involvement in marketing or business practices that may at some future time be adjudicated to be illegal. The Commission argues in response that the reporting of such information is mandated by the philosophy of full disclosure upon which the federal securities laws are predicated. *Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

 The parties are essentially in agreement that whether Schlitz' potentially illegal activities must be disclosed depends upon whether such matter is material information. This inquiry is the focus of Schlitz' motion to dismiss for failure to state a claim upon which relief may be granted and will be discussed in that regard below. To the extent that Schlitz' motion to dismiss for lack of subject matter jurisdiction is based on the purported immateriality of the undisclosed matters, I find no basis for finding that the Commission is acting beyond its authority. The securities laws must be interpreted "not technically and restrictively, but flexibly to effectuate [their] remedial purposes." *Securities and Exchange Commission v. Capital Gains Research Bureau*, supra, at 195, 84 S.Ct. at 285. When viewed under this standard, I believe that the instant enforcement action must be sustained as a proper exercise of the Commission's jurisdiction.

Schlitz also argues that the Commission's lack of jurisdiction in this case is demonstrated by the conflict between the disclosure requirements of the securities laws and the Fifth Amendment protections available to the agents through whom corporations act. Schlitz contends that acceptance of the Commission's theory of enforcement would compel all public companies to become agents of the Commission in ferreting out illegal activity of corporate employees.

 In my opinion, Schlitz lacks the standing to invoke the possible Fifth

Amendment deprivation of its employees as a defense to this action. It is settled that corporations cannot invoke the privilege against self-incrimination. *Hale v. Henkel*, 201 U.S. 43, 74–75, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Since the corporation cannot avail itself of the privilege against self-incrimination, it cannot take advantage of an allegedly unconstitutional burden placed on its individual employees. *Campbell Painting Corp. v. Reid*, 392 U.S. 286, 288–289, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); Cf. *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). Furthermore, the self-policing burden placed on a regulated industry is a necessary and proper adjunct of the statutory scheme established by Congress. *United States v. Stirling*, 571 F.2d 708, 728 (2d Cir. 1978); *United States v. Solomon*, 509 F.2d 863, 870 (2d Cir. 1975). In sum, I am not convinced that the Commission is acting beyond its jurisdiction in initiating or maintaining this action.

## III. MOTION TO DISMISS CLAIMS UNDER SECTIONS 10(b) and 17(a)

Schlitz argues that the complaint fails to state a claim under sections 10(b) and 17(a) because the business transactions alleged in paragraphs 9 and 10 of the complaint, the Spanish brewery transactions, and the press releases were unrelated to fraud "in connection with the purchase or sale" of securities, as required by the express terms of section 10(b) and Rule 10b–5, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and, with respect to 17(a), were unrelated to fraud "in the offer or sale" of securities. Schlitz suggests that the complaint charges "fraud in the purchase or sale of beer" rather than fraud in connection with the purchase or sale of securities.

■ In my judgment, this argument is flawed. The Commission bases the 10(b) and 17(a) claims on the premise that information concerning the questionable marketing practices and the transactions with the Spanish affiliate corporations should have been disclosed to the investing public and that the failure to so disclose such information in Schlitz' filings with the Commission and in its media releases rendered the assertions contained therein misleading. Misleading information contained in reports filed with the Commission and in media releases is the kind of material upon which the reasonable investor might rely in making investment decisions; that is, such information is presented "in a manner reasonably calculated to influence the investing public." *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) (en banc), cert. denied sub nom. *Coates v. Securities Exchange Commission*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). It is unnecessary for the Commission to show that the business transactions which should have been disclosed were themselves securities transactions. *Securities and Exchange Commission v. General Refractories Corp.*, 400 F.Supp. 1248, 1257 (D.D.C.1975).

■ Schlitz also argues that it had no obligation to disclose these allegedly improper transactions because they were not material. The parties are essentially in agreement that whether Schlitz' allegedly improper marketing practices and transactions with Spanish affiliates were material so as to be a required subject of disclosure depends upon whether there is a substantial likelihood that a reasonable person would attach importance to these matters in making investment decisions regarding Schlitz securities. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Sunstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir.), cert. denied, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Securities and Exchange Commission v. Texas Gulf Sulphur Corp.*, supra.

The Commission suggests several reasons why the information concerning Schlitz' allegedly improper activities is material. First, the Commission argues that this information has a direct bearing on the integrity of management. In *Securities and Exchange Commission v. Kalvex, Inc.*, 425 F.Supp. 310, 315 (S.D.N.Y.1975), and *Cooke v. Teleprompter Corp.*, 334 F.Supp. 467

(S.D.N.Y.1971), courts found that information of improprieties committed by corporate directors might be material to investor decisions concerning who should control the corporation. Without disputing that such information might be material to investors, Schlitz contends that the integrity of management is not at issue in this case because the complaint makes no reference to individual directors.

I am not persuaded that the omission of allegations implicating individual directors is significant. Paragraph 9(e) of the complaint alleges that Schlitz' marketing practices continued even after Schlitz was warned by the bureau of alcohol, tobacco, and firearms that such marketing practices must be terminated. I believe that the question of the integrity of management gives materiality to the matters the Commission claims should have been disclosed. Further specificity is unnecessary under Rule 8(a), Federal Rules of Civil Procedure.

The Commission also contends that the allegedly improper transactions were material from an economic standpoint. Schlitz disagrees, emphasizing that when measured against Schlitz' 1976 net sales of approximately $1 billion the alleged $3 million in payments to retailers and others would amount to only 3% of its net sales for that year.

The Commission's position is that the relatively small amount of the payments involved alone is not dispositive. In its report on questionable and illegal corporate payments and practices submitted to the Senate Housing & Urban Affairs Committee, May 12, 1976, the Commission stated, at pp. 29–30:

"Under most circumstances, the amount of the payment is not dispositive of the materiality issue unless, of course, the payment is significant by itself. Where the size of the payment does not otherwise require disclosure, the materiality of such payments would depend on the relative economic implications of the payment to the company as a whole or to a significant line of the company's business. Thus, for example, a questionable or illegal payment that seems relatively small in relation to corporate revenues, income or assets may assume much greater importance when one assesses the amount of business that may be dependent on or affected by it."

In addition, the Commission suggests that its discovery may reveal that the amount of payments involved was much greater than $3 million. These arguments amply demonstrate the potential materiality of the information in question.

The Commission also stresses that the allegedly illegal practices engaged in by Schlitz and its customers posed a substantial threat to their licenses to sell beer—licenses upon which many of the operations of Schlitz and its customers depend.

The parties have different views as to whether Schlitz' efforts to disclose the risk of license suspension or revocation were timely or adequate, and I am unable to resolve this dispute on the present motion. However, I am unconvinced by Schlitz' argument that the risk of license suspension was not material as a matter of law because of the infrequency of past criminal prosecutions against brewers or wholesalers for violations of the Federal Alcohol Administration Act; the complaint alleges that Schlitz was given a warning in 1973 that such practices must cease.

Schlitz also argues that some of the allegedly unlawful transactions are immaterial because the applicable statute of limitations bars a criminal prosecution for such transactions. However, even if a criminal prosecution for certain of the transactions is now barred, a matter disputed by the Commission, this does not establish the immateriality of these activities insofar as a civil action to enforce securities laws is concerned. The Commission is not necessarily subject to the same limitations periods which restrict the right of a private plaintiff to maintain actions to enforce federal securities laws. See e.g. 15 U.S.C. §§ 77m and 78r(c).

Finally, Schlitz argues that the 10(b) and 17(a) claims must be dismissed because

Schlitz' disclosures were full and complete as a matter of law.

In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976), the Supreme Court stated that determining whether information is material

"requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact."

In *TSC Industries, Inc.*, the Court reversed a court of appeals' grant of summary judgment. A fortiori, these "delicate assessments" of which the Court speaks should not be made on a motion to dismiss. Accordingly, I am unwilling to purport now to resolve the asserted adequacy of Schlitz' disclosures.

Schlitz next argues that the sections 10(b) and 17(a) claims must be dismissed because the complaint fails to allege that the failure to disclose the improper marketing practices was made with the scienter described in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Although Schlitz does not limit this argument to the section 10(b) claim, it is clear that scienter need not be pleaded nor proved for the section 17(a) claim. *Securities and Exchange Commission v. World Radio Mission, Inc.*, 544 F.2d 535, 541 n.10 (1st Cir. 1976); *Securities and Exchange Commission v. Van Horn*, 371 F.2d 181, 185 (7th Cir. 1966).

Paragraph 8 of the complaint, generally tracking Rule 10b–5, alleges that Schlitz

"has employed and is employing devices, schemes and artifices to defraud . . and has engaged and is engaging in transactions, acts, practices and courses of business, which have operated and are operating as a fraud and deceit upon purchasers and sellers . . . of securities of Schlitz."

It has been held that pleading scienter in the language of section 10(b) and Rule

10b–5 is sufficient to overcome a motion to dismiss. *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 540 F.2d 27, 37 (2d Cir. 1976) (dictum); *Securities and Exchange Commission v. Penn Central Co.*, 450 F.Supp. 908 (E.D.Pa., 1978); but see *Wolford v. Equity Resources Corp.*, 424 F.Supp. 670, 672 (S.D.Ohio 1976).

The Commission argues that regardless of whether scienter has been adequately pleaded, scienter need not be proved in a Commission proceeding for equitable relief as distinguished from a damage action by a private individual. The Supreme Court specifically reserved judgment on this question in *Ernst & Ernst v. Hochfelder*, 425 U.S. at 193–194 n.12, 96 S.Ct. 1375, and several courts have since reached different conclusions. Compare *Securities and Exchange Commission v. World Radio Mission*, supra, with *Securities and Exchange Commission v. Cenco, Inc.*, 436 F.Supp. 193, 200 (N.D.Ill.1977). I believe that the better course is to reserve ruling on the question at this time since scienter has been adequately pleaded and may be part of the Commission's proof at trial. *Securities and Exchange Commission v. Penn Central Co.*, supra, 450 F.Supp. at 918.

The defendant contends that the complaint fails to state a claim that Schlitz aided and abetted violations of Sections 17(a) and 10(b). Paragraph 11 of the complaint alleges that Schlitz

"participated in activities which may have been falsely recorded in the books and records of the recipients of Schlitz' payments, including various public companies (and thus reflected in the filings of such companies with the Commission) in order to conceal such inducements in possible violation of state and federal laws."

The specific activities in which Schlitz is alleged to have participated with other public companies are set forth in detail in paragraphs 9 and 10 of the complaint. These allegations are sufficient to state a claim upon which recovery may be granted. *Brennan v. Midwestern United Life Insurance Co.*, 259 F.Supp. 673, 682 (N.D.Ind. 1966), affirmed 417 F.2d 147 (7th Cir. 1969),

cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970). I also find that the complaint avers the circumstances of the alleged fraud with sufficient particularity to meet the requirements of Rule 9(b), Federal Rules of Civil Procedure.

## IV. MOTION TO DISMISS CLAIMS UNDER SECTIONS 13(a) and 14(a)

In support of its motion to dismiss the second cause of action of the complaint, which charges a violation of section 13(a) of the Securities Exchange Act, 15 U.S.C. § 78m(a) and Rules 12b–20, 13a–1, 13a–10, and 13a–13, 17 C.F.R. §§ 240.12b–20, 240.-13a–10, and 240.13a–13, Schlitz argues that section 13(a) is merely a reporting provision which requires that certain reports be filed and does not provide a cause of action for the false and misleading content of reports which are timely filed.

This argument is meritless. Rule 12b–20, applicable to section 13 filings by virtue of Rule 12b–1, 17 C.F.R. § 240.12b–1, requires that reports filed under section 13 include "such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made not misleading." The allegations in the complaint that Schlitz' reports contained false and misleading statements because of its failure to disclose the potentially criminal marketing practices, in my opinion, state a claim under section 13(a) which may be redressable by equitable relief under section 21(d) of the Securities Exchange Act, 15 U.S.C. § 78u(d). See *Securities and Exchange Commission v. Great American Industries, Inc.*, 407 F.2d 453, 457 (2d Cir. 1968), cert. denied 395 U.S. 920, 89 S.Ct. 1770, 23 L.Ed.2d 237 (1969).

The third cause of action alleges that Schlitz violated section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) and Rules 14a–3 and 14a–9, 17 C.F.R. §§ 240.-14a–3 and 240.14a–9, in connection with its solicitation of proxies for annual and other meetings. Schlitz argues that to state a claim under section 14(a), it is necessary to allege a causal connection between any in-

jury suffered and the violation of the proxy rules. To support this argument, Schlitz relies on cases brought by private plaintiffs for money damages. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), cert. denied 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Lewis v. Elam*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D. N.Y. February 15, 1977). Schlitz has cited no case in which an SEC complaint was dismissed for failure to plead or prove an injury proximately caused by a section 14(a) violation.

The Commission cogently argues that to accept Schlitz' argument would emasculate the Commission's powers under section 21(d) of the Securities Exchange Act, 15 U.S.C. § 78u(d), to enjoin violations before they occur or reoccur. To establish a claim under § 14(a), the Commission need only allege a material violation of the proxy rules. To the extent that Schlitz' argument rests on the immateriality of the omissions, its motion to dismiss must be denied for the reasons expressed in section III of this decision.

## V. THE RELIEF REQUESTED BY THE COMMISSION

The defendant also argues that the injunctive relief requested by the Commission, including the appointment of a special agent to review and monitor the defendant's activities and to correct Schlitz' allegedly inaccurate reports, is inappropriate relief in this case as a matter of law. I decline to consider this question at this stage of the litigation for the reasons stated previously in connection with *Securities and Exchange Commission v. Penn Central Co.*, 450 F.Supp. 908 (E.D.Pa.1978). The matter has been adequately pleaded; resolution can better be determined after trial.

## VI. MOTION TO STAY

Schlitz requests that this action be stayed pending the outcome of a "parallel" criminal proceeding against Schlitz pending in this district. The indictment charges Schlitz with violations of the Federal Alco-

hol Administration Act. The alleged violations include some of the same conduct that the Commission claims in this action should have been disclosed by Schlitz in its filings and press releases.

Schlitz advances three reasons for staying this action: (1) the Commission will have to prove that the transactions were illegal in order to make a prima facie case of nondisclosure. Since the legality of the transactions will be determined in the criminal case, judicial economy would be best served by awaiting such determination; (2) it will be more convenient for the parties if attention could be devoted to one case at a time, and (3) a stay of proceedings will prevent the Commission's abuse of the discovery process to aid the government's criminal case.

The power to stay proceedings is "inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). A motion for a stay of proceedings is addressed to the court's discretion. *United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872–73 (3rd Cir. 1976).

Schlitz' first argument in support of a stay is diminished by the fact that the Commission's burden of proof in this civil action to establish the illegality of the transactions is less than the government's burden in the criminal case. See *Wright v. Securities and Exchange Commission*, 112 F.2d 89, 94 (2d Cir. 1940). Furthermore, as stated previously, the defendant, a corporation, does not enjoy the Fifth Amendment privilege against self-incrimination which may justify a stay under some circumstances. See *Securities and Exchange Commission v. Stewart*, 476 F.2d 755 (2d Cir. 1973).

In my judgment, any prejudice which may occur can be alleviated by protective orders, upon proper applications to the court. *United States v. Kordel*, 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Securities and Exchange Commission v. Stewart*, supra; *Driver v. Helms*, 402 F.Supp. 683 (D.R.I.1975). I am not persuaded that the circumstances stated by Schlitz alone or in combination justify a total stay of these proceedings. Accordingly, the motion to stay proceedings will be denied.

## VII. MOTION TO STRIKE

Schlitz has moved for an order pursuant to Rule 12(f), Federal Rules of Civil Procedure, striking allegations of unlawful activities committed by the alleged recipients of illegal payments from Schlitz and the allegations of violations of Spanish law by various Spanish breweries. It is urged that these allegations are irrelevant to the adequacy of Schlitz' disclosures under the securities laws and that the named corporations and individuals are unable to defend themselves from such allegations of wrongdoing.

Motions to strike are looked upon with disfavor; "[m]atter will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277 (E.D.Wis.1975). From the pleadings, it is clear that the allegations of unlawful practices committed by third parties are not irrelevant to this case; these allegations provide the factual basis for the claim that unlawful practices were committed by Schlitz which should have been disclosed, and for the claim that Schlitz aided and abetted securities laws violations by such third parties. Therefore the motion to strike will be denied.

## VIII. CONCLUSION

Therefore, IT IS ORDERED that the defendant's motions to dismiss, for a stay of proceedings, and to strike allegations from the complaint be and hereby are denied.