SECURITIES and EXCHANGE COMMISSION, Plaintiff,

v.

William J. PARDUE, Defendant.

Civil Action No. 02–8048.

United States District Court, E.D. Pennsylvania.

May 3, 2005.

Frank C. Huntington, Boston, MA, for Plaintiff.

L. Oliver Frey, Philadelphia, PA, for Defendant.

### MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

The present matter comes before this Court for the purpose of determining relief. This securities enforcement action filed by the Securities and Exchange Commission ("Commission") against William J. Pardue ("Pardue") came before the Court for a non-jury trial on January 18, 2005. After consideration of the evidence presented at trial, the Court entered findings of fact and conclusions of law as to liability on April 1, 2005.[1] Subsequent to the Court's finding of liability, a hearing was held on April 15, 2005, for the purpose of determining relief.

The Commission seeks a variety of monetary and injunctive relief. First, the Commission seeks two permanent injunctions including an injunction from further violations of section 10(b) of the Exchange Act and/or Rule 10b–5 thereunder, and an injunction from service as an officer or director of a publicly traded company. Second, the Commission seeks monetary relief in the form of a disgorgement of profits from the 1999 transaction in the amount of $139,697 with prejudgment interest of $61,911.29, as well as a civil penalty in the amount of $139,697, equal to the amount of profits gained in the insider transaction. I consider injunctive relief separately from monetary relief.

---

**1.** See S.E.C. v. Pardue, No. 02–8048, 2005 WL 736884 (E.D.Pa. Apr.1, 2005).

## I. INJUNCTIVE RELIEF

### A. INJUNCTION FROM FUTURE VIOLATIONS OF THE SECURITIES LAWS

▉ The Securities and Exchange Act permits the Commission to seek an injunction in federal district court to prevent violations of the securities laws. 15 U.S.C. § 78u(d). Such an injunction is appropriate where there is, "at a minimum, proof that a person is engaged in or is about to engage in a substantive violation of either one of the Acts or of the regulations promulgated thereunder." *Aaron v. S.E.C.*, 446 U.S. 680, 700–01, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). Accordingly, when a past violation of the securities acts has been proven, the district court may enjoin future violations of the Acts upon a showing of a reasonable likelihood that the defendant will violate the same law again. *See S.E.C. v. Sargent*, 329 F.3d 34, 39 (1st Cir.2003).

▉ The reasonable likelihood of future violations is typically assessed by looking at several factors, none of which is determinative. *S.E.C. v. Youmans*, 729 F.2d 413, 415 (6th Cir.1984). Courts consider, among other things, the nature of the violation, including its egregiousness and its isolated or repetitive nature, as well as whether the defendants will, by virtue of their occupations, be in a position to violate again. *Id.; see also S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215 1228 (D.C.Cir.1989); *S.E.C. v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976). Courts also take the defendant's recognition of the wrongfulness of his conduct into account in determining whether to issue the injunction. *Sargent*, 329 F.3d at 39; *S.E.C. v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1100–01 (2d Cir.1972).

▉ There are few grounds for the issuance of such an injunction. Although a serious violation of the securities laws, the likelihood that Pardue would engage in future inside trading is questionable. Pardue's access to material, non-public information was provided through his family connections to Central Sprinkler. However, with the completion of the purchase by Tyco International, the Meyer family no longer owns or manages the company. As a result, Pardue will have no access to information regarding Central Sprinkler. Even if he had such access, it would be impossible for him to trade, as Central Sprinkler is no longer publicly traded or registered with the Commission. Furthermore, Pardue does not now, nor has he ever worked in the financial sector in a position giving him access to material, non-public information. All of the evidence points to an isolated incident that is unlikely to be repeated by Pardue in the future. As I conclude that there is no reasonable likelihood of a future violation, I will not grant the requested injunction.

### B. INJUNCTION FROM SERVICE AS AN OFFICER OR DIRECTOR OF A PUBLICLY TRADED COMPANY

▉ Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), also permits the Commission to seek an injunction barring Pardue from serving as an officer or director of a publicly traded company. Such an injunction may issue "if the person's conduct demonstrates substantial unfitness to serve." *Id.* There is no statutory definition of unfitness, and there are no hard and fast factors to be evaluated by a court in determining whether such a bar should issue. *See S.E.C. v. Zubkis*, No. 97–8086, 2000 WL 218393, at *10–11 (S.D.N.Y. Feb.23, 2000). However, courts should weigh the "loss of livelihood and the stigma attached to permanent exclusion from the corporate suite," against the likelihood of future misconduct in a fitting

manner. *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir.1995).

Although a permanent bar on serving as an officer or director of a publicly traded company would be the most effective means of preventing a future violation by Pardue, I see little reason to issue it. All of the evidence presents an isolated incident in which Pardue capitalized more on his family connections to Central Sprinkler than on his status as a former executive vice president. As the family is no longer in ownership, and Pardue is no longer employed by the company, the odds of a future violation are lower. Had Pardue abused his position with Central Sprinkler, I would be more inclined to issue the ban. *Cf. Zubkis*, 2000 WL 218393 at *11. Such not being the case, the injunction will not issue.

## II. MONETARY RELIEF

Two types of monetary relief are available to the Commission in an enforcement action: the equitable remedy of disgorgement of profits and civil penalties as authorized by statute. Neither form of relief is automatic, rather the scope of the remedy entails an analysis separate from assessing whether the Commission has stated a cause of action in its enforcement case. *See S.E.C. v. Penn Cent. Co.*, 450 F.Supp. 908, 916 (E.D.Pa.1978). Once it has been determined that a violation of the securities laws has taken place, the court has "the discretion to fashion whatever equitable relief we deem necessary to deprive defendants of all gains flowing from the wrong." *Id.*

As an initial matter, the Court feels compelled to address the present financial condition of Mr. Pardue. Issuing a decision in this case without doing so would amount to ignoring the elephant in the room, and, therefore, doing considerable misjustice both to Pardue and to the Commission.

Mr. Pardue reports that he has a negative net worth of between $50,000 and $100,000. In addition, he owes approximately $325,000 in back taxes that accrued from his capital gains while day trading from 1998 to 2000. His family's sole asset is the family home in Devon, Pennsylvania, which Mr. Pardue reports is subject to a series of mortgages totaling approximately $300,000. Although Pardue has taken other employment, his current salary is approximately $50,000 per year. Additionally, Pardue is the head of a household with six children ranging in age from twenty-six to nine. Five of Pardue's children still live in the family home.

Although the Commission would dispute the accuracy of the numbers provided by Pardue, there is no dispute regarding their effect. It is beyond dispute that Pardue cannot pay any monetary relief ordered by the Court in this matter. As a result, even if monetary relief were to be set at a more moderate level, the punitive effect to Pardue would be high while the Commission's interest in public deterrence would be compromised by the outward appearance of a sweetheart deal.

As a result, the Commission argues that Pardue's impecuniousness should have no effect on the Court's determination of relief. While I agree with the Commission's assertion that Pardue should fairly and rightfully be expected to pay something in the event he is able, I see no reason to pointlessly impose an order for monetary relief with dubious chances of execution and for no other purpose than further solidifying the financial ruination of the defendant and his innocent family. I will, therefore, not impose monetary relief at the levels requested by the Commission. However, with these considerations in mind, the Court will order the following relief.

## A. DISGORGEMENT

■ Disgorgement has become the routine remedy for a securities enforcement action. If a person is found in violation and has profited from the ensuing transaction, courts generally order the disgorgement of those profits. *S.E.C. v. Yun,* 148 F.Supp.2d 1287, 1290 (M.D.Fla.2001). However, as an equitable remedy disgorgement is not intended to operate as a fine. *Id.* Unlike damages, disgorgement is a method of forcing a defendant to give up the amount by which he was unjustly enriched. *S.E.C. v. P.B. Ventures,* 1991 WL 269982, *2, 1991 U.S. Dist. LEXIS 17901, at *5 (E.D.Pa. Dec. 11, 1991). "The amount to be disgorged is not limited as a matter of law to the damages inflicted upon purchasers and sellers. The [Commission] does not stand in the shoes of the purchasers and sellers who it asserts were defrauded." *Penn Cent. Co.,* 450 F.Supp. at 916.

Accordingly, in light of Pardue's present financial condition, I will order that he disgorge $25,000 in unjustly derived profits from his improper trading in Central Sprinkler stock. While such an amount falls far short of the approximately $140,000 he gained from the transaction, it appears as if the Internal Revenue Service and the stock market declines since 2000 have deprived Pardue of the benefits of the transaction. I conclude that $25,000 is a sufficient amount to ensure that Pardue receives no gain from the wrong.

## B. CIVIL PENALTY

■ The Insider Trading and Securities Fraud Enforcement Act permits courts, in light of the facts and circumstances of a particular case, to impose a civil penalty up to "three times the profit gained or loss avoided as a result of such unlawful purchase, sale or communication" arising from insider trading. 15 U.S.C. § 78u–1. Civil penalties are intended to "enhance deterrence against insider trading, and where deterrence fails, to augment the ... detection and punishment of this behavior." *Yun,* 148 F.Supp.2d at 1295. A wide variety of factors is considered in determining whether penalties are in order and in what amount, including the egregiousness of the violations, the isolated or repeated nature of the violations, the degree of scienter involved, the deterrent effect given the defendant's financial worth, and other penalties arising from the conduct. *Id.*

■ In light of Pardue's current financial worth, I will impose a $25,000 penalty for what I see as a very serious violation of the securities laws. The obligations placed upon Pardue as an officer and stockholder of Central Sprinkler were simple: not to trade in his company's stock while aware of confidential information that would be of value in the market. Pardue blatantly violated that obligation. Furthermore, to this day, Pardue fails to appreciate the gravity of his conduct or its wrongfulness. As a result, I conclude that a civil penalty is appropriate to ensure that such future conduct will be deterred. I choose $25,000 as an amount in line with the seriousness of his violation, yet an amount within Pardue's potential financial reach.

## III. CONCLUSION

After careful consideration of the evidence and arguments presented, I make the following conclusions. First, I consider the likelihood of a future violation by Pardue to be low enough such that injunctions against future violations of the securities laws and against service as an officer or director in a public company are unwarranted. Second, I will order that Pardue disgorge $25,000 in profits and pay a civil penalty of $25,000 to deprive him of any

wrongful gains and deter future violations of the securities laws.

I, therefore, enter Final Judgment.